**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN P. HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-1011 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BOROUGH OF BALDWIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

**I.   MEMORANDUM**

Pending before the Court is Defendant Borough of Baldwin ("Defendant" or "Borough")'s Motion to Dismiss (**Doc. 13**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion to Dismiss (**Doc. 13**) will be GRANTED IN PART and DENIED IN PART.

**A.  BACKGROUND[1]**

Defendant hired Plaintiff Brian Henderson on November 1, 2001. (Am. Compl. (Doc. 12) ¶ 5). Plaintiff is currently employed by Defendant as a Police Officer/Patrolman. (Id. at ¶ 6).

In September 2011, the Borough's Civil Service Commission ("Commission") created an open position at the rank of lieutenant to be filled in the Borough's Police Department. (Id. at

---

[1] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 12). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

1

¶ 8).   Under Pennsylvania law, when there is a "vacancy in the police force . . . in the borough which is to be filled by promotion," the Commission must "certify for each vacancy the names of three persons on the eligibility list who have received the highest average in the last preceding promotional examination held within a period of two years preceding the date of the request for the eligibility list."  8 Pa.C.S. § 1188(c)(1).  Consistent with Section 1188(c)(1), the Commission certified an eligibility list of officers for the open position of lieutenant.  (Doc. 12 at ¶ 9).  Plaintiff's name was third on the list.[2]  (Id. at ¶ 10).

On September 13, 2011, the Borough Council ("Council") voted to create a second lieutenant position.  (Id. at ¶ 12).  The Commission did not certify an additional eligibility list.  (Id. at ¶ 13).  On September 20, 2011, at the Borough Council Regular Meeting, "several council members voiced their concerns over the legality" of the creation of a second lieutenant position and voted against it.  (Id. at ¶ 16).  Nevertheless, the motion passed and two lieutenant positions were filled on September 20, 2011.  (Id. at ¶ 17).  Plaintiff was not one of the two officers promoted to the rank of lieutenant.[3]

In November 2011, Plaintiff raised concerns about the hiring process "because there had been no medical and/or psychological examinations performed on the selected candidates." (Id. at ¶ 18).  Pennsylvania law provides that an applicant to a Borough police department "selected from the eligibility list shall receive a conditional offer of employment," which "shall be conditioned upon the conditional appointee undergoing a physical and psychological medical

---

[2] The Complaint does not specify whether the eligibility list was ranked, with Plaintiff ranked third on the list.  8 Pa.C.S. § 1188(c)(1) is also silent as to whether the three names on an eligibility list must be ranked.

[3] Although the Complaint does not so specify, the Court presumes that the two individuals other than Plaintiff whose names appeared on the eligibility list in September 2011 were promoted to the rank of lieutenant.

examination and a determination that the conditional appointee is capable of performing all the essential functions of the position."  8 Pa.C.S.A. § 1189.  Plaintiff alleges that at his September 2011 oral interview, one of the interviewers stated: "Oh, you're the Union guy."  (Id. at ¶ 19). Plaintiff believes that "as a result of his union activity and or his actions in bringing attention to the improper hiring process he was going to be discriminated against and or retaliated against." (Id. at ¶ 20).

On December 6, 2011, the Borough Council rescinded the promotions.  (Id. at ¶ 21).  By letter dated December 7, 2011, Plaintiff was notified that because the September promotions "had been procedurally incorrect" and rescinded by the Council, the Borough "would like to schedule all eligible applicants" for a medical examination and psychological evaluation. (Id. at ¶ 22; Id. at Ex. A).  The letter also stated "[i]f you do not wish to subject yourself to the medical examination and psychological evaluation, you will not be eligible for promotion." (Id. at ¶ 23; Id. at Ex. A).  Plaintiff alleges that he "subjected himself to the testing for fear of being disqualified for the promotion." (Id. at ¶ 29).  Plaintiff passed both the medical and psychological evaluations but was not promoted.  (Id. at ¶ 30).  Plaintiff alleges that the "results" of the medical and psychological evaluations were shared with Borough Council members and the Borough Manager "in violation of the Americans with Disabilities Act, and in violation of Pennsylvania's HIPPA [sic] Laws, causing great embarrassment to Mr. Henderson."  (Id. at ¶ 31).

Plaintiff alleges that he was qualified for the lieutenant position because of his "prior performance during his fourteen (14) years" of employment with Defendant.  (Id. at ¶ 42). Plaintiff alleges that "subsequent to his complaints . . . all requests for training [have been] denied and . . . his [master] firearms qualifications have been lost." (Id. at ¶ 33).  Plaintiff "believes and therefore avers that he was retaliated against for his union activity throughout the

promotion process and continues to be retaliated against by denying and ultimately losing his master firearm's instructor credentials" (Id. at ¶ 34) and that "he was denied promotion by calling the Defendant Borough's attention to their improper promotion process, causing the demotion and subsequent retesting of candidates" (Id. at ¶ 35).  On January 17, 2012, Borough Council voted to promote the same two officers who had been promoted to the rank of lieutenant in September 2011.  (Id. at ¶ 32).

Plaintiff filed "his claim with the Equal Employment Opportunity Commission, as well as the United States Department of Justice, the Pennsylvania Attorney General's Office and the Pennsylvania Department of Labor."  (Id. at ¶ 36).  Plaintiff received a "Right to Sue Letter" on or about May 12, 2015, which he attaches to the Complaint as Exhibit B.  (Id. at ¶ 37; Id. at Ex. B).  Plaintiff subsequently filed this lawsuit on August 3, 2015, setting forth two Counts: "Violation of the Americans with Disabilities Act" ("ADA") (Count I) and "Violation of Title VIII of the Pennsylvania Statutes § 1189" (Count II).  (Compl. (Doc. 1)).  Defendant filed a Motion to Dismiss and Brief in Support on October 22, 2015.  (Defs.' Mot. Dismiss Complaint (Docs. 4, 5)).  On December 22, 2015, Plaintiff filed a motion for leave to file an amended complaint.  (Pl.'s Mot. Leave to File Amended Complaint (Doc. 10)).  On December 23, 2015, Plaintiff's motion was granted, and Plaintiff was ordered to file an Amended Complaint on or before December 24, 2015.  (Doc. 11).

Plaintiff filed the Amended Complaint – currently the operative pleading – on January 13, 2016.  (Doc. 12).  The Amended Complaint restates his claims in five separate counts: "Violation of the Americans with Disabilities Act" ("ADA") (Count I), "Violation of Title VIII of the Pennsylvania Statutes § 1189" (Count II), "Violation of Pennsylvania Civil Service Law Act" (Count III), "Violation of Pennsylvania Health Insurance Portability and Accountability Act

4

(HIPAA) of 1996" (Count IV), and "Violation of the Pennsylvania Labor Relations Act" (Count V). Id. Defendant filed the instant Motion to Dismiss (Doc. 13) on January 25, 2016. For the following reasons, Defendant's motion will be granted in part and denied in part.

**B. ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**A. Count I – Americans with Disabilities Act Claim**

Count I of the Amended Complaint asserts a cause of action under the Americans with Disabilities Act of 1990 ("ADA").

The ADA contains specific provisions regarding the propriety of employer-mandated medical examinations. 42 U.S.C. § 12112(d). The ADA identifies three distinct time periods in which the standards for medical review are enumerated: Pre-offer, post-offer and employment. In the pre-offer stage, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). Once an offer of employment has been extended, a prospective employee may be asked to undergo a medical examination. 42 U.S.C. § 12112(d)(3). An "entrance examination" is permissible under the ADA if "all entering employees are subjected to such an examination regardless of disability," the applicable confidentiality requirements are adhered to, and the results of the examination are

"used only in accordance with" the Act.  42 U.S.C. § 12112(d)(3)(A)-(C).  After an employee's

duties have commenced, the employer may not ask him or her to undergo another medical

examination or inquire as to whether he or she is disabled "unless such examination or inquiry is

shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

An employer remains free to inquire as to the ability of an applicant or employee "to perform

job-related functions" at all times. 42 U.S.C. § 12112(d)(2)(B), (4)(B).

Plaintiff alleges that he was subjected to a medical examination prior to being given a

conditional offer of promotion to the position of lieutenant.  As noted, the ADA clearly provides

that, in the pre-offer stage, an employer may "not conduct a medical examination."  42 U.S.C.

§ 12112(d)(2)(A).  In its briefing, Defendant does not dispute that the Borough did not make

Plaintiff a conditional offer prior to sending him a letter directing him to submit to a medical

examination.  Instead, Defendant argues that, even assuming its actions violated § 12112(d),

Plaintiff lacks standing to sue because he does not allege a cognizable injury.  Defendant cites to

Tice v. Centre Area Transportation Authority, 247 F.3d 506, 519-20 (3d Cir. 2001), which held

that a plaintiff proceeding with a claim under § 12112(d) must "demonstrat[e] the existence of an

injury-in-fact" in order to obtain relief.  Defendant argues that Plaintiff, like the plaintiff in Tice,

"is unable to identify any prejudice occasioned by the pre-promotion testing or the alleged

disclosure as he passed the tests and remained on the eligibility list."  (Doc. 14 at p.12).

Defendant's argument is unpersuasive.  In EEOC v. Grane Healthcare Co., 2 F. Supp. 3d

667 (W.D. Pa. 2014), this Court considered and rejected the same argument, explaining:

> By relying on Tice to challenge the EEOC's standing in this case, the Defendants
> conflate the "injury" necessary to satisfy the jurisdictional prerequisites of Article
> III with the "injury" needed to justify an award of damages under the ADA.  "An
> injury need not be economic or tangible in order to confer standing."  LeBlanc–
> Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir.1995).  The "injury" required
> under Article III generally consists of "an invasion of a legally protected interest."

> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d
> 351 (1992).  The invasion of legal rights conferred upon an individual by statute
> can provide him or her with standing to seek redress in federal court.  *Havens
> Realty Corp. v. Coleman*, 455 U.S. 363, 373–74, 102 S.Ct. 1114, 71 L.Ed.2d 214
> (1982).  In certain instances, federal courts can "vindicate[ ] deprivations of
> certain 'absolute' rights that are not shown to have caused actual injury through
> the award of a nominal sum of money." *Carey v. Piphus*, 435 U.S. 247, 266, 98
> S.Ct. 1042, 55 L.Ed.2d 252 (1978).  **A violation of § 12112(d) occurs as soon as
> an employer conducts an unlawful medical examination or initiates a
> prohibited medical inquiry.** *Katz v. Adecco USA, Inc.*, 845 F.Supp.2d 539, 545
> n. 7 (S.D.N.Y.2012).  Article III's injury-in-fact requirement can be satisfied by
> "an identifiable trifle of injury." *NCAA v. Governor of New Jersey*, 730 F.3d
> 208, 219 (3d Cir.2013).  The "injuries" complained of here are clearly sufficient
> to satisfy the Constitution's jurisdictional prerequisite.

*Id.* at 681 (emphasis added).  In short, Plaintiff's allegation that Defendant required him to

submit to a medical examination prior to giving him a conditional offer states an injury-in-fact

sufficient to give rise to a cognizable claim under the ADA.

Additionally, Plaintiff's allegation that Defendant disclosed confidential medical

information to Borough Council members and the Borough Manager adequately states a cause of

action under the ADA.   The ADA provides that "information obtained regarding the medical

condition or history of the applicant" must be "collected and maintained on separate forms and in

separate medical files and [] treated as a confidential medical record . . . ." 42 U.S.C.

§ 12112(d)(3)(B).  Plaintiff alleges that the Borough violated § 12112(d) by sharing the results of

his medical examination with individuals with no supervisory authority over him, including the

Borough Manager and Borough Council members.  In its briefing, Defendant argues that

Plaintiff fails to state a claim for relief because he does not specify what "results"—other than

the fact that he passed the medical examinations—were purportedly disclosed.  The Court agrees

that Plaintiff could have more clearly alleged that the Borough disclosed confidential information

regarding his "medical condition or history," in violation of § 12112(d).  However, the Court

notes that Plaintiff also alleges that the disclosure of the exam "results" caused him "great

embarrassment," suggesting that the Borough disclosed some information apart from the mere fact that Plaintiff passed those exams.  Thus, construing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff states a cognizable ADA claim by alleging that Defendant improperly disclosed his confidential medical information.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (in deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must construe complaints in the light most favorable to the plaintiff).

For these reasons, Defendant's Motion to Dismiss Count I will be denied.

**B.  Count II – Title VIII of the Pennsylvania Statutes § 1189 Claim**

Count II of the Amended Complaint asserts a violation of "Title VIII of the Pennsylvania Statutes § 1189."   As noted, 8 Pa. C.S. § 1189 provides, in relevant part:  "An applicant selected from the eligibility list shall receive a conditional offer of employment.  The offer of employment shall be conditioned upon the conditional appointee undergoing a physical and psychological medical examination and a determination that the conditional appointee is capable of performing all the essential functions of the position."  Plaintiff alleges that the Borough violated 8 Pa. C.S. § 1189 by "forc[ing]" him "to subject himself to a pre-offer medical examination and psychological evaluation."  Defendant moves to dismiss Count II on multiple grounds, including that Plaintiff failed to exhaust his administrative remedies and that Plaintiff's claim is time-barred.  Based on the briefing before the Court, the Court finds that Plaintiff's Section 1189 claim is in fact time-barred.  Therefore, the Court need not reach Defendant's remaining arguments.

Defendant argues that Plaintiff's Section 1189 claim is barred by Pennsylvania's catch-all two-year statute of limitations for injuries to persons or property.  42 Pa.C.S. § 5524(7).  Plaintiff does not dispute that the two-year statute of limitations applies to his claim but argues that the

limitations period should be tolled because Defendant's failure to promote him constitutes a "continuing harm."  See Doc. 16 at pp. 3-4 ("For each and every day the Defendant Borough refused to promote Brian Henderson a new Statue [sic] of Limitations is created as a result of the continuing harm.").  The "continuing harm" or "continuing violation" theory deems a claim timely if any act which constitutes part of the continuing violation took place within the statute of limitations.  As the Supreme Court explains, this doctrine is only appropriate where the alleged conduct constitutes a continuous pattern and is durational in nature.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that since a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice, a claim is timely if filed when any of the acts constituting the unlawful practice occurred within the statutory period); see also Malone v. Specialty Prods. & Insulation Co., 85 F. Supp. 2d 503, 505 (E.D. Pa. 2000) (holding that defendant's failure to respond to repeated requests to accommodate plaintiff's disability constituted a continuing violation).  On the other hand, the continuing violation theory does not apply when the conduct in question consists of unrelated, isolated incidents.  The Supreme Court has explained that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and the continuing violation theory does not apply.  Morgan, 536 U.S. at 114.

Here, the allegations underlying Plaintiff's Section 1189 claim, including his allegation that Defendant required him to submit to pre-offer medical testing on December 7, 2011 and that it failed to promote him on January 12, 2012, constitute "discrete acts" that are individually actionable.  See, e.g., Hopson v. Dollar Bank, 994 F. Supp. 332, 336-37 (W.D. Pa. 1997) (failure

9

to promote claim is not part of continuing violation).  Accordingly, to assert a timely Section

1189 claim, Plaintiff should have filed this lawsuit on or before January 12, 2014, two years after

the Borough made its final promotion decision.  He did not do so until August 3, 2015.  Thus,

Plaintiff's claim is time-barred, and will be dismissed with prejudice.[4]  See Phillips v. Cnty. of

Allegheny, 515 F. 3d 224, 245 – 46 (3d Cir. 2008) (dismissal with prejudice is appropriate when

leave to amend would be futile).

### C.  Count 3 –Pennsylvania Civil Service Law Act Claim

In Count III, Plaintiff asserts that the manner in which Defendant advertised and

conducted the promotional examinations violated the Pennsylvania Civil Service Law Act, 71

P.S. § 741.1 et seq. ("Civil Service Act").  As Defendant argues, however, the Civil Service Act

is not applicable to the Borough.  Unlike the Pennsylvania Human Relations Act ("PHRA"),

which applies to employees of the Commonwealth *and its political subdivisions, boards,*

*departments, commissions, and school districts*, 43 P.S. § 954(a)-(b) (emphasis added), the Civil

Service Act only regulates the conduct of officers or employees of the Commonwealth in the

"classified service."  71 P.S. § 741.905a.  This includes Commonwealth employees employed by

the Department of Public Welfare, the Department of Labor and Industry, the Pennsylvania

Liquor Control Board, the State Civil Service Commission, the Pennsylvania Board of Parole,

the Department of Mental Health, the Department of Education, the Department of Health, the

Department of Banking, the Department of Insurance, the State Employees' Retirement Board in

the Department of State, the Pennsylvania Labor Relations Board, professional licensing boards,

---

[4] Plaintiff's filing a charge with the EEOC in July 2012 did not toll any of his related state-law claims. Federal district courts in this Circuit have consistently held that the "pendency of a discrimination charge before the PHRC or EEOC does not toll the statute of limitations for related Pennsylvania state tort claims." Babich v. Mgmt. & Tech. Res., Inc., 2007 WL 764029, at *3 (W.D. Pa. Mar. 9, 2007) (citations omitted).
.

local civil defense organizations, and certain positions in the Department of Highways and under the Governor's jurisdiction.  71 P.S. § 741.3(d).  Because Plaintiff is not a Commonwealth employee in the "classified service," he cannot bring a cause of action against the Borough under the Civil Service Act.

Furthermore, even if Plaintiff could bring a Civil Service Act claim against the Borough, such a claim is not timely.  The Civil Service Act includes a 20-day appeal period from the date of the "alleged violation."  See 71 P.S. § 741.951; Taylor v. Com., State Civil Service Comm'n, 447 A.2d 1098, 1099 (Pa. Commw. Ct. 1982) (affirming dismissal of appeal of non-selection because employee's challenge was not within the 20 days of learning that another had been given the position).  As noted, the allegations giving rise to this claim took place between September 2011 and January 17, 2012.  Plaintiff, however, did not file this lawsuit until August 3, 2015.  Accordingly, Plaintiff's Civil Service Act claim is time-barred and will be dismissed with prejudice.

**D.  Count 4 –Health Insurance Portability and Accountability Act Claim**

In Count IV of the Amended Complaint, Plaintiff alleges that Defendant violated the "Pennsylvania Health Insurance Portability and Accountability Act."  (Doc. 12).  The Court is not aware of any Pennsylvania statute titled the "Pennsylvania Health Insurance Portability and Accountability Act," and thus presumes that Plaintiff intends to bring a claim pursuant to the *federal* Health Insurance Portability and Accountability Act ("HIPAA").  42 U.S.C. § 1320d-1 *et seq*.  "HIPAA provides for confidentiality of medical records and governs the use and disclosure of protected health information by covered entities that have access to that information and that conduct certain electronic health care transactions."  Burton v. Rite Aid Pharm., 2010 WL 1924478, at *2 (D. Del. May 12, 2010) (citing 45 C.F.R. § 164.502).  Plaintiff alleges that the

Borough violated his right to privacy under HIPAA by disclosing to Borough Council members his protected health information without his express written authorization.  See 45 C.F.R. § 160.103 (defining "protected health information").

Defendant moves to dismiss this claim, arguing that HIPAA does not apply to Defendant, as the Borough is not a "covered entity" under the Act.   As Defendant argues, HIPAA applies only to "covered entities," defined as healthcare providers (e.g., doctors, clinics, psychologists, hospitals, dentists), health plans (e.g., medical, dental, HMOs, Medicare) or healthcare clearing houses (e.g., billing services, health management information systems, re-pricing companies). 45 C.F.R. § 164.502(a); 45 C.F.R. § 160.103.  "There are no federal statutes generally prohibiting the release of medical records by an employer . . . The privacy rule of [HIPAA] does not directly relate to employers or other plan sponsors that are not HIPAA covered entities." Ehrlich v. Union Pacific R.R. Co., 302 F.R.D. 620, 628 (D. Kan. 2014) (citation omitted).  In his response to Defendant's Motion to Dismiss, Plaintiff argues that the Borough is a "covered entity" because it "provides health insurance to its employees."  (Doc. 16 at p. 5).  But, simply offering health insurance to one's employees does not convert an employer into a "covered entity."  Rather, the privacy rule "applies to employers only to the extent that they somehow operate" in the capacity of a health plan, health care clearinghouse or health care provider. Harris v. Vescom Corp., 2007 WL 1810159, at *2 n.1 (S.D. Ga. July 10, 2007) (citing 45 C.F.R. § 164.512(b)(1)(v)).  Because Plaintiff does not allege that Defendant disclosed his protected health information while operating as a health plan, health care clearinghouse or health care provider, he fails to state a cognizable HIPAA claim against Defendant.

Furthermore, Defendant argues that, even if the Borough were a covered entity, Plaintiff's claim should be dismissed because there is no private right of action under HIPAA.

Although Court of Appeals for the Third Circuit has not addressed this issue, every other federal court to address it has determined that there is no private right of action under HIPAA.  Jackson v. Mercy Behavioral Health, 2015 WL 401645, at *4 (W.D. Pa. Jan. 28, 2015) (citations omitted); see also Baum v. Keystone Mercy Health Plan, 826 F.Supp.2d 718, 721 (E.D. Pa. 2011) (no private right of action under HIPAA); Tapp v. Brazill, 2011 WL 6181215 (E.D. Pa. Dec. 13, 2011); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560, 574 (M.D. Pa. 2005); Carney v. Snyder, 2006 WL 2372007, at *4 (W.D. Pa., Aug. 15, 2006); Fetzer v. Cambria County Human Services, 384 F. Supp. 2d 813, 816 (W.D. Pa. 2005).  Consistent with these cases, this Court finds that HIPAA does not create a private cause of action.

For these reasons, the Court will grant Defendant's motion to dismiss Plaintiff's HIPAA claim with prejudice.

**E.  Count 5 - Pennsylvania Labor Relations Act Claim**

Finally, Plaintiff asserts a claim under the Pennsylvania Labor Relations Act ("PLRA"). Defendant seeks to dismiss this claim on two bases.  First, Defendant argues that the Court lacks jurisdiction over this claim, citing authority that "[i]t is well settled that the Pennsylvania Labor Relations Board (PLRB) has exclusive jurisdiction to adjudicate unfair labor practice charges arising under the Pennsylvania Labor Relations Act (PLRA)." Barron v. City of Philadelphia, 481 A.2d 379, 381 (Pa. Commw. Ct. 1984) (citing 43 P.S. § 211.8); Grier v. Philadelphia Hous. Auth., 1995 WL 80096, at *8 (E.D. Pa. Feb. 27, 1995) ("[T]he PLRB has exclusive jurisdiction over claims for violation of the PLRA").  Plaintiff does not contest that the Court lacks subject matter jurisdiction over his claim, and the Court find that, to the extent Plaintiff is alleging an unfair labor practice under the PLRA, jurisdiction lies exclusively with the PLRB.  Hollinger v. Dep't of Pub. Welfare, 469 Pa. 358, 365 (1976) (citing Building Service Employees International

Union, Local 252 v. Schlesinger et al., 440 Pa. 448, 452 (1970)) (interpreting language in the PLRA providing that the power to prevent unfair labor practices lies "exclusively" with the PLRB to mean that "jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else.").

Defendant additionally argues that, even if the Court had jurisdiction over Plaintiff's PLRA claim, the claim is untimely.  As Defendant argues, an unfair labor practice charge must be brought within six weeks of the alleged act.  43 P.S. § 211.9(e) ("No petition or charge shall be entertained which relates to acts which occurred or statements which were made more than six weeks prior to the filing of the petition or charge."); Dormont Borough v. PLRB, 794 A.2d 402, 407 (Pa. Commw. Ct. 2002) (holding that the six-week limitations period for filing an unfair labor practice begins when the complainant has reason to believe that the unfair labor practice has occurred).  Here, Plaintiff knew or should have known of his alleged injury in January 2012, but, as noted, did not file this lawsuit until August 2015.  Under these circumstances, Count V is time-barred and will be dismissed with prejudice.

## II.  ORDER

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint (**Doc. 13**) is GRANTED IN PART and DENIED IN PART.

Consistent with the foregoing, the following claims are hereby DISMISSED WITH PREJUDICE:  Counts II through V of the Amended Complaint (**Doc. 12**).

IT IS SO ORDERED.

September 20, 2016                                          s\Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

CC (via ECF email notification):

All Counsel of Record

15