IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN P. HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-1011 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BOROUGH OF BALDWIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I.     MEMORANDUM**

Pending before the Court is Defendant Borough of Baldwin ("Defendant" or "Borough")'s Motion for Summary Judgment (**Doc. 36**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion for Summary Judgment (**Doc. 36**) will be GRANTED.

**A.     BACKGROUND[1]**

Plaintiff Brian Henderson ("Plaintiff" or "Henderson") has been a police officer with the Borough since January 2002. Def's Statement of Undisputed Facts (Doc. 37) ¶ 11. Plaintiff

---

[1] The following undisputed facts are taken from Defendant's Statement of Undisputed Facts. The Local Rules of the United States District Court for the Western District of Pennsylvania require that Plaintiff file a responsive "concise statement which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by . . . admitting or denying whether each fact contained [therein] . . . is undisputed and/or material . . . setting forth the basis for the denial if any fact . . . is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record . . . " See LR 56(C)(1)(a), (b). Plaintiff failed to file a responsive concise statement replying to Defendant's Concise Statement of Material Facts as required by the local rules. Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding a motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." See LR 56(E).

1

applied for a lieutenant position in 2011.  Id. ¶ 16.  In August 2011, the Baldwin Borough Civil Service Commission certified the eligibility list of officers who could fill a lieutenant position.  Id. ¶ 17.  Plaintiff was third on the list, with Craig Cavlovic ("Cavlovic") and Matthew Kearns ("Kearns"), scoring higher than Plaintiff.  Id.  On September 20, 2011, Borough Council promoted Cavlovic and Kearns, the two officers who scored higher than Plaintiff, to lieutenant.  Id. ¶ 18.  Following Cavlovic and Kearns's promotions to lieutenant, by letter dated November 23, 2011, Plaintiff questioned why the promotion process did not comply with the Civil Service requirement that a medical and psychological examination be conducted.  Id. ¶ 19.  In his November 23, 2011 letter, Plaintiff stated that he "can't help but feel [his] candidacy for Lieutenant had been predetermined, perhaps due to [his] position as the Union President."  Id. ¶ 20.

On December 6, 2011, Borough Council unanimously passed a motion to rescind the promotions of Cavlovic and Kearns "and to have the reinstatement of these positions contingent on the passing of the medical and psychological evaluations as per the Civil Service Regulations."  Id. ¶ 21.  On December 7, 2011, in his role as union president, Plaintiff requested "written clarification of where the legal authority came from to remove [Cavlovic and Kearns from their supervisory positions] without due process."  Id. ¶ 22.  By letter dated December 7, 2011, Borough Manager John Barrett ("Barrett") responded to Plaintiff and provided an explanation of the Borough's actions regarding the promotions.  Id. ¶ 23.  In that letter, Barrett informed Plaintiff that the Borough had concluded that the officers in question had not completed a medical examination and psychological evaluation as required in the Civil Service Regulations.  Id. ¶ 24.  Barrett further stated that these conclusions "have caused the Borough to take further action to properly promote," including "the 'temporary rescinding' of the

promotional appointments," which will be reinstated contingent upon the satisfactory completion of both a medical and psychological evaluation." Id. ¶ 25.

In a separate letter to Plaintiff also dated December 7, 2011, Barrett stated that the promotions were not compliant with the Civil Service Regulation due to the lack of examinations and had been temporarily rescinded. Id. ¶ 26. In this letter, Barrett further stated that the Borough wished to schedule the examinations for "all eligible applicants" and that if Plaintiff would like to be considered eligible for the promotion, he should advise the Chief of Police of his "decision to participate in the medical examination and psychological evaluation." Id. ¶ 27. Plaintiff understood that Cavlovic and Kearns remained lieutenants in an acting capacity and would be placed "back in the same position" if they passed the physical and psychological examinations. Id. ¶ 28. As such, Plaintiff did not have a reasonable expectation that he would be promoted if Cavlovic and Kearns passed the medical examination and psychological evaluation unless "perhaps down the road . . . another slot maybe opened up." Id. ¶ 29.

On December 8, 2011, Plaintiff informed Barrett that he "would very much like to take the physical and psychological exams for the position of lieutenant" but questioned whether failing either would jeopardize his current position as a Borough police officer. Id. ¶ 30. Plaintiff chose to proceed with the physical examination and psychological evaluation in case Cavlovic or Kearns did not pass one of the tests or another lieutenant position became available during the pendency of the Civil Service list. Id. ¶ 31. Plaintiff had some doubt about whether Cavlovic and Kearns would pass both tests. Id. ¶ 32. Plaintiff had no reason to think he would not pass either the physical examination or the psychological evaluation. Id. ¶ 33. If another lieutenant position opened, Plaintiff believed he would not have to take the physical examination or psychological evaluation again. Id. ¶ 34.

Plaintiff's physical examination was conducted on December 13, 2011. Id. ¶ 45. The report of the physical examination was faxed to John Barrett on December 13, 2011. Id. ¶ 46. Plaintiff's psychological evaluation was conducted on January 3, 2012. Id. ¶ 47. Plaintiff passed both the psychological evaluation and the physical examination. Id. ¶ 48. Plaintiff claims that Barrett's receipt of the results of the physical examination violated the ADA's confidentiality provisions because Barrett is not Plaintiff's "immediate supervisor." Id. ¶ 38. Plaintiff admitted, however, that it would have been necessary for Barrett to receive the results so that he could inform Borough Council of the candidates who remained eligible for promotion. Id. ¶ 39. Plaintiff also suggests that other staff may have seen the results of his medical examination, as the fax machine to which it was transmitted was not located in a private area. Plaintiff believes he had "conversations at the time" about a concern "that possibly one or more of the clerks or secretaries being able to see [the results]" with other police officers, but could not recall which officers. Id. ¶ 41. Plaintiff never received any information that, in fact, any unauthorized person viewed the results of his physical examination or psychological evaluation. Id. ¶ 42.

Like Plaintiff, both Cavlovic and Kearns passed both the physical examination and psychological evaluation. Id. ¶ 35. On January 17, 2012, Cavlovic and Kearns were again promoted to the rank of lieutenant. Id. ¶ 36. Thereafter, Plaintiff brought this lawsuit, seeking: (a) "[m]onetary damages in excess of $75,000;" (b) "[p]romotion to the rank of lieutenant and retroactive back pay commensurate with the rank;" (c) costs, interest, and attorney fees; and (d) "[p]unitive and/or exemplary damages." Id. ¶ 51. In response to the Borough's Interrogatory No. 6, requesting that Plaintiff "[i]dentify and describe any and all damages, benefits, other expenses and/or economic damages for which you are seeking to recover from this lawsuit," Plaintiff wrote "promotion and back pay." (Exhibit A to Appendix). Id. ¶ 52. In response to the

4

Borough's Interrogatory No. 7, requesting that Plaintiff "[i]dentify and describe the 'great embarrassment' suffered by Plaintiff as alleged in Paragraph 31 of the Amended Complaint," Plaintiff wrote "embarrassment-wise, I was not promoted, but still subjected to psychological and physical testing similar to my peers who were promoted." Id. ¶ 53. Plaintiff testified that the "great embarrassment" he suffered was because he "had gone through the same process as my peers, but I wasn't promoted." Id. ¶ 54. Plaintiff did not receive any medical treatment in connection with his claims or alleged damages. Id. ¶ 55.

**B. STANDARD OF REVIEW**

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

**C. ANALYSIS**

### 1. Plaintiff's Claim Arising from the Invalid Medical Examination and Psychological Evaluation

Plaintiff claims that Defendant is liable for violating 42 U.S.C. § 12112(d) because the medical examination and psychological evaluation it conducted constituted a prohibited pre-offer medical examination and/or inquiry as defined by § 12112(d). As the Court held in its September 20, 2016 Order, the Court agrees with Plaintiff that Defendant violated § 12112(d) by

conducting a pre-promotion medical examination.  See Doc. 17 at 7.  Nonetheless, the Court's finding of a technical violation here is not dispositive of the ultimate issue in this case – *i.e.*, whether Defendant is liable to Plaintiff for damages or other relief as a result of this violation. See Armstrong v. Turner Indus., Inc., 141 F.3d 554, 561-62 (5th Cir. 1998) (there is "no indication either in the text of the ADA or in its legislative history that a violation of the prohibition against pre-employment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability.").  As other courts have held, "damages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision.  There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation." Id. at 562.  Specifically, Plaintiff "must show, in addition to the fact that the medical examinations occurred, that he suffered an injury in the form of emotional, pecuniary or compensative damages, and that such damages are causally related to the medical examination." EEOC v. Grane Healthcare Co., Civil No. 3:10-250, 2015 WL 5439052, *66 (W.D. Pa. Sept. 15, 2015) (citing Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 519 (3d Cir. 2001)).

The Court finds that Plaintiff has not made such a showing.  As discussed above, it is undisputed that the two individuals who were promoted over Plaintiff, Cavlovic and Kearns: (a) scored higher than Plaintiff; (b) were promoted in September 2011; and (c) were to be re-promoted contingent only upon passing the physical examination and psychological evaluation. Plaintiff acknowledged that this was his understanding, and that he had no reasonable expectation of promotion if Cavlovic and Kearns passed the tests.  Accordingly, there is no factual basis from which the Court can reasonably infer that Defendant's decision to promote Cavlovic and Kearns was causally related to the medical examinations that Plaintiff took and

6

passed. For this reason, Defendant's technical violation of § 12112(d) cannot support Plaintiff's request for a "promotion to the rank of lieutenant and retroactive back pay commensurate with the rank." Doc. 12 at p. 9; Green v. Joy Cone Co., 278 F. Supp. 2d 526, 537 (W.D. Pa. 2003), aff'd, 107 F. App'x 278 (3d Cir. 2004) ("the ADA requires a causal link between the violation and the damages sought by the plaintiff.").

Furthermore, while recovery may be sought for less tangible injuries caused by medical examinations and inquiries, Tice, 247 F.3d at 519 (suggesting that an "emotional" injury could constitute "actual damage"), Plaintiff presents no evidence that he suffered any non-economic injury as a result of being subjected to pre-promotional medical examinations. See Doc. 12 at p. 8 (seeking $75,000.00 in monetary damages). Plaintiff testified that he suffered "great embarrassment" because he "had gone through the same process as [his] peers, but [he] wasn't promoted." Doc. 37 ¶ 54. In essence, then, any emotional distress Plaintiff claims to have suffered arose out of Defendant's decision not to promote him, and not out of the medical examinations themselves. Furthermore, Plaintiff concedes that he has not received any treatment for his alleged emotional distress. Thus, there is no evidence that Plaintiff was damaged in any compensable way, either emotionally or physically, by virtue of the invalid medical examinations.

Plaintiff also has not shown that he can recover punitive damages as a result of Defendant's technical violation. Doc. 12 at p. 9 (requesting "punitive and/or exemplary damages"). Punitive damages may be awarded under the ADA upon a showing that an employer has "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Here, Plaintiff has not carried his burden of proving that Defendant acted with

malice or reckless indifference to Plaintiff's federally protected rights.  To the contrary, the undisputed evidence demonstrates that Defendant conducted the pre-promotional medical examinations *at Plaintiff's own request*, and did so to comply with the Borough's Civil Service Regulations.

Finally, given that Plaintiff has not shown any entitlement to damages or other relief under the ADA, the Court finds that he is not a prevailing party and thus cannot recover attorneys' fees and costs.  Doc. 12 at p. 9 (requesting "reasonable costs, interest, and expenses, including but not limited to reasonable attorney's fees); Farrar v. Hobby, 506 U.S. 103, 117 (1992) (explaining that "[w]hen the plaintiff's success is purely technical or de minimis, no fees can be awarded") (O'Connor, J., concurring); see also Texas State Teachers Assn. v. Garland Independent School Dist., 489 U.S. 782, 792 (1989) ("a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status").

In short, the Court finds that, while Plaintiff has demonstrated that he suffered a *legal* injury as a result of Defendant's pre-promotional medical examinations, he has not shown that he is entitled to any damages or other equitable relief under the ADA.  See Doc. 17 at 6 (citing EEOC v. Grane Healthcare Co., 2 F. Supp. 3d 667, 681 (W.D. Pa. 2014)) (one should not "conflate the 'injury' necessary to satisfy the jurisdictional prerequisites of Article III with the 'injury' needed to justify an award of damages under the ADA.").  Accordingly, the Court will grant Defendant summary judgment as to Plaintiff's § 12112(d) claim based on the invalid medical examinations.

### 2. Plaintiff's Claim Arising from the Alleged Violation of the ADA's Confidentiality Provisions

Plaintiff also claims that Defendant violated the ADA by sharing the results of his medical examination "with individuals who were not Plaintiff's immediate supervisor."  Doc. 12

¶ 36. Plaintiff alludes to two potential breaches of confidentiality. First, Plaintiff suggests that the Borough Manager was not authorized to receive the test results or to convey promotion eligibility information to Borough Council. However, it is well established that "[m]edical information may be given to—and used by—appropriate decision-makers involved in the hiring [or promotion] process so they can make employment decisions consistent with the ADA." Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations (EEOC Oct. 10, 1995), reprinted in EEOC Compl. Man. (CCH) ¶ 6903, at 5380; see also 42 U.S.C.A. § 12112(d)(3)(B) (contemplating that employers will obtain "information . . . regarding the medical condition or history of the applicant . . ."). Here, Plaintiff does not contest that the Borough Manager disclosed the results of the medical examination to the Borough Council in order for the Council to make the promotion decision. Accordingly, this disclosure did not violate the ADA.

Second, Plaintiff speculates that other staff (secretaries or clerks) may have had access to a fax machine and potentially viewed transmitted medical information about him. However, there is no evidence that anyone actually viewed Plaintiff's confidential medical information. The Court finds no violation of the ADA based solely on these speculative allegations. See Tice, 247 F.3d at 520 (dismissing a breach of confidentiality ADA claim where the plaintiff "has not even identified a single person who improperly viewed his medical files.").

For these reasons, the Court will grant summary judgment to Defendant as to Plaintiff's claim that Defendant improperly disclosed his confidential medical information.

## II. ORDER

For the reasons stated above, Defendant's Motion for Summary Judgment (**Doc. 36**) hereby is GRANTED. A judgment order pursuant to Federal Rule of Civil Procedure 58 will follow.

December 13, 2017

<u>s/Cathy Bissoon</u>
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All counsel of record.